IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br>  131 M Street, N.E., <br>  Washington, D.C. 20507 <br> <br>         Plaintiff, <br> <br>     v. <br> <br> SHEPHERD ELECTRIC CO., INC., <br>  13150 Mid-Atlantic Blvd., <br>  Laurel, MD 20708 <br> <br> <br> <br>         Defendant. | Civil Action No. <br> <br> <br> <br> COMPLAINT <br> <br> <br> JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race and retaliation and to provide appropriate relief to Larry Coley ("Coley") and Willie Peeler ("Peeler") who were adversely affected by such practices. The United States Equal Employment Opportunity Commission ("the EEOC" or "the Commission") alleges that Defendant, Shepherd Electric Co., Inc. ("Defendant"), violated Title VII when it discharged Coley and Peeler because of their race, black, and in retaliation for complaining of race-based discrimination. The EEOC further alleges that Defendant violated Title VII by paying Peeler significantly lower wages than those paid to a less qualified white employee who replaced Peeler after being hired a week before Peeler's termination.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland, Southern Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(l) and (3).

4. At all relevant times, Defendant Shepherd Electric Co., Inc., has continuously been a corporation doing business in the State of Maryland and Prince George's County, Maryland, and has continuously had at least fifteen (15) employees.

5. During each calendar year from 2019 through and including 2022, Defendant has had more than 200 employees.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Larry Coley and Willie Peeler filed Charges of Discrimination with the Commission alleging violations of Title VII by Defendant.

8. On July 13, 2022, the Commission issued to Defendant Letters of Determination for each Charge finding reasonable cause to believe that Defendant violated Title VII and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letters of Determination.

10. The Commission was unable to secure from Defendant conciliation agreements acceptable to the Commission.

11. On September 1, 2022, the Commission issued to Defendant Notices of Failure of Conciliation.

12. On September 13, 2022, the Commission issued to Defendant Amended Letters of Determination finding reasonable cause to believe that Defendant violated Title VII and inviting Defendant to join with the Commission in resuming informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

13. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Amended Letters of Determination.

14. On September 19, 2022, the Commission notified Defendant that it had failed to provide conciliation agreements acceptable to the Commission and that further conciliation efforts would be futile.

15. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

A. Larry Coley

16. On September 17, 2014, Larry Coley began his employment with Defendant as the Operations Manager (also referred to as Warehouse Manager) of its Beltsville, Maryland, location.

17. When hired, Coley replaced Dave Byrd, white, who Defendant removed from the Beltsville Warehouse Manager position due to performance concerns and then placed into a role that consisted of new duties that Defendant created for him.

18. As the Warehouse Manager, Coley was responsible for leading and managing warehouse employees and drivers at the Beltsville location.

19. On July 15, 2015, less than a year into Coley's employment, Defendant promoted him to the position of Southern Division Operations Manager.

20. As Southern Division Operations Manager, Coley was responsible for overseeing the operations of Defendant's Beltsville location as well as its Sterling, Virginia, and new District of Columbia locations.

21. On July 24, 2015, Coley received a performance review with ratings primarily of "Outstanding," which stated, among other things, that while Coley "inherited a mess from [ ] previous warehouse management . . . [he is] NEVER rattled." The performance review also noted that Coley's "ability to communicate with his personnel, as well as [Defendant's] sales teams throughout Shepherd, [ ] made [Defendant] a stronger company."

22. On June 24, 2016, Coley transitioned to the position of Beltsville Operations Manager.

23. Throughout his employment, Coley continued to receive outstanding performance evaluations.

    a. On September 21, 2016, Coley received a performance review with ratings primarily of "Outstanding," which stated, among other things, that "Larry and his team worked tirelessly" to "get the warehouse back in shape" from its prior condition. The performance review also stated that "'I' doesn't exist with Larry; it's always 'we'[.] [H]e puts his men first, works a tremendous amount of hours and NEVER seeks recognition, he's one of the most *unselfish* people I know!!"

    b. On September 10, 2017, Coley received a performance review with ratings of "Outstanding," which stated, among other things, that "Larry exemplifies a work ethic that's superior to most" and that he is a "[t]op-notch employee with great leadership skills!!!" The performance review acknowledged that under Coley's leadership, Defendant's Beltsville location "transitioned from a weak and divisive work team, to a highly trained and motivated one . . . ."

24. In or around November 2018, Defendant closed its Beltsville warehouse and moved to Laurel, Maryland.

25. Contemporaneous with Defendant's move, Coley became Operations Manager of the Laurel location.

26. On February 13, 2019, Coley received a performance review, which stated, among other things, that "Larry's strategic planning and communication skills made the actual move [from Beltsville to Laurel] seamlessly smooth." The performance review also noted that "Larry does an outstanding job handling the day to day challenges presented to him," "[h]e is an excellent problem

solver," "is a true leader" and "he always does what is best for the company and puts the company first."

27. Defendant engaged in practices, observed by Coley, of favoritism towards white employees, who Defendant moved to another role or location when they had performance issues or violated company policy, while Defendant terminated or disciplined black employees for less serious issues and replaced black employees with white ones.

28. In October 2019, Coley complained to Jaime Johnson ("Johnson"), Vice President of Operations, that Defendant punished black employees more harshly than white employees and all employees should be held to the same performance standards.

29. Only three months later, in January 2020, Defendant discharged Coley.

30. At the time of Coley's discharge, Johnson along with Defendant's General Manager Bill Graham ("Graham") and Human Resources Director Chris Robinson ("Robinson"), met with Coley.

31. Robinson told Coley that the reason for his discharge was that the company decided to go in a different direction. Defendant provided no other reason to Coley for his termination.

32. At the time of his discharge, Coley's job performance was satisfactory, and he had not received any warnings pursuant to Defendant's progressive discipline policy.

33. Following Coley's termination, Defendant assigned Coley's duties to three white managers.

34. Beginning in January 2020, and continuing thereafter, Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by discharging Coley because of his race (black) and subjecting Coley to retaliation in violation of

Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) for engaging in the protected activity of complaining about race-based disparate treatment.

35. The effect of the practices complained of in Paragraphs 16 – 34 above has been to deprive Coley of equal employment opportunities and otherwise adversely affect his status as an employee because of his race (black) in violation of Title VII.

36. The unlawful employment practices complained of above were intentional.

37. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Coley.

B.    Willie Peeler

38. On June 6, 2016, Willie Peeler began his employment for Defendant as a warehouse worker at its Beltsville location.

39. In or around March 2017, Peeler became a night shift driver for the Beltsville location.

40. In March 2017, Peeler received a performance review with ratings of "Good," which, among other things, described him as "a good all-around employee," "a reliable employee," and as an employee who "rarely makes mistakes and is a self-motivator."

41. Later in 2017, Defendant promoted Peeler to the position of Assistant Night Manager for the Beltsville location.

42. In early July 2018, Defendant promoted Peeler to the position of Warehouse Lead at its Beltsville location.

43. As Warehouse Lead, Peeler supervised a crew of at least thirteen employees.

44. On July 10, 2018, Peeler received a performance review with ratings mostly of "Outstanding" and a few ratings of "Good," which described Peeler as "a good employee," "an

expert in receiving in transfers and routing trucks," and noted that "his attention to detail and will to get the job done right the first time has given him strength to become a Lead in operations."

45. In or around June 2019, Defendant promoted Peeler to the position of Shipping Manager at the Laurel, Maryland warehouse.

46. As Shipping Manager, Peeler oversaw daily operations including shipping, receiving, truck maintenance, and inventory control; he trained and managed warehouse staff; and he was authorized to coach and discipline employees.

47. On June 4, 2019, Peeler received a performance review with ratings of primarily "Outstanding," which among other things, described Peeler as "a very dependable employee," having "a great attitude towards his job duties and his fellow peers," and "holds a high regard for integrity and honesty."

48. In January 2020, Defendant assigned Peeler the additional duties of the Driver Coordinator position, which included overseeing the truckdriver workforce and serving as the liaison between the customers and the company. While assigned to these new duties, Peeler also continued his duties in the warehouse to assist new workers to become acclimated to the job.

49. On April 27, 2020 Defendant hired Christopher Doyle ("Doyle"), white, to fill Peeler's Shipping Manager position.

50. Defendant hired Doyle at a starting salary of $65,000 with a promised increase to $70,000 upon receipt of a 90-day satisfactory review.

51. Peeler's Shipping Manager salary was $50,000.

52. The educational requirements for the Shipping Manager position consist of a high school diploma or its equivalent. Peeler and Doyle both satisfied this requirement.

53. Peeler had four years of experience working for Defendant. Doyle had none.

54. Upon learning that Doyle was receiving a salary of $15,000 more for the Shipping Manager position, Peeler asked Johnson, Vice President of Operations, about the disparity in pay. Johnson denied that Doyle was receiving higher pay, and Peeler complained that the wage disparity was based on race and requested that Johnson increase his salary to that of his newly hired white colleague.

55. Johnson did not increase Peeler's salary.

56. One week later, on May 5, 2020, Defendant's General Manager Graham and Johnson met with Peeler and informed him that he was being discharged immediately because Defendant decided to go in a different direction, that the pandemic necessitated his termination, and that he could obtain more information from Human Resources. Peeler contacted Human Resources regarding his termination but received no further explanation as to why he had been fired.

57. After Peeler's termination, Doyle performed Peeler's Shipping Manager duties at a higher salary than Peeler's.

58. Beginning in April 2020, and continuing thereafter, Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by discharging Peeler because of his race (black), subjecting Peeler to unequal terms and conditions of employment, disparate wages because of his race, and subjecting Peeler to retaliation in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) for engaging in the protected activity of complaining about race-based discrimination.

59. The effect of the practices complained of in Paragraphs 38 – 58 has been to deprive Peeler of equal employment opportunities and otherwise adversely affect his status as an employee because of his race (black) and his protected activity in violation of Title VII.

60. The unlawful employment practices complained of above were intentional.

61. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Peeler.

## PRAYER FOR RELIEF

Wherefore, the Commission requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, agents, employees, attorneys, and all persons in active concert or participation with it, from engaging in race discrimination and retaliation against its employees.

B. Order Defendant to institute and carry out policies, practices and programs that provide equal employment opportunities for black employees and employees who engage in protected activity, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Charging Parties Coley and Peeler by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant to make whole Charging Parties Coley and Peeler by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendant to make whole Charging Parties Coley and Peeler by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

    F.    Order Defendant to pay Charging Parties Coley and Peeler punitive damages for its malicious and reckless conduct, as described above, in an amount to be determined at trial.

    G.    Grant such further relief as this Court deems necessary and proper in the public interest.

    H.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

/s/ Debra Lawrence
DEBRA M. LAWRENCE
Regional Attorney

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Assistant Regional Attorney

/s/ Ashley Martin
ASHLEY M. MARTIN
Senior Trial Attorney, U.S. EEOC
Washington, DC, Field Office
131 M St., NE, 4th Floor
Washington, DC 20507
Phone: (202) 921-2766
Fax: (202) 653-6053
ashley.martin@eeoc.gov
Dist. Md. Bar No. 812183